IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DARLA J. HICKMAN,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action 2:20-cv-6030
Judge James L. Graham
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Darla J. Hickman, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 15). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** the case under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## I. BACKGROUND

Plaintiff protectively filed her application for supplemental security income benefits on January 26, 2018,[1] alleging that she became disabled on July 29, 2017. (*See* R. 190–95.) On October 18, 2019, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge Noceeba Southern (the "ALJ"). (R. 38–57.) Plaintiff, represented by counsel, appeared and testified, as did Vocational Expert Connie O'Brien-Heckler. On November 13, 2019, the ALJ issued a decision denying benefits. (R. 12–37.) On September 22, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–6.) Plaintiff seeks judicial review of the ALJ's unfavorable determination. In her Statement of Errors, Plaintiff asserts that the ALJ failed to properly evaluate the opinions of her primary care physician, Dr. Garth Bennington, under the applicable regulations. (Pl.'s Statement of Errors at 6, ECF No. 16.)

## II. THE ALJ'S DECISION

The ALJ issued her decision on November 13, 2019, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 12–37.) At step one of the

---

[1] There is a discrepancy in the record over the date of Plaintiff's application. The application summaries in the record indicate a date of January 26, 2018, and the parties agree upon that date. (R. 190; ECF No. 16 at 1; ECF No. 18 at 1.) However, the Administrative Law Judge's opinion repeatedly identifies the application date as November 23, 2017. (*See, e.g.,* R. 12–14.) This discrepancy does not alter the analysis in this opinion.

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since she filed her application for benefits. (R. 14.) At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, diabetes mellitus, neuropathy, hearing loss, degenerative disc disease, degenerative joint disease of the left acromioclavicular joint, left labral tear, hiatal hernia, asthma, obstructive sleep apnea, status post-right kidney absence, stage three kidney disease, affective disorder, anxiety-related disorder, and posttraumatic stress disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] The Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) subject to the following limitations: she requires an option to change positions from sitting to standing after 30-to-45 minutes for one-to-two minutes (though not off task longer than five percent total in a workday). She can frequently climb ramps or stairs, stoop, kneel, and crouch; occasionally crawl and never climb ladders, ropes, or scaffolds. She can do occasional overhead reaching. She can occasionally be exposed to loud noise. She can occasionally be exposed to respiratory irritants, occasionally use hazardous machinery, and occasionally be exposed to unprotected heights. She can perform simple, routine, and repetitive tasks and work in a low stress environment, defined as only occasional changes in the work setting. She can be off task up to 45 minutes a day, spread throughout the day.

(R. 17–18.) At step four of the sequential process, the ALJ found that Plaintiff was unable to perform her past relevant work as a cleaner and desk clerk, or as a cleaner and laundry worker. (R. 30–31.) At step five, relying in part on the vocational expert's testimony, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, including as an order worker, copy examiner, or table worker. (R. 31–32.) The ALJ therefore concluded that Plaintiff was not under a disability as defined by the Social Security Act. (R. 32.)

### III.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As set forth above, Plaintiff challenges the ALJ's consideration of the opinions rendered by her primary care physician, Dr. Garth Bennington, M.D. (Pl.'s Statement of Errors 6, ECF No. 16.) More specifically, Plaintiff maintains reversal is required because although the ALJ considered Dr. Bennington's opinions, her failure to attribute them to Dr. Bennington demonstrates that she violated applicable regulations. The undersigned agrees.

Because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's new regulations for evaluating medical opinion evidence control how the ALJ was required to evaluate Dr. Bennington's opinions. *See* 20 C.F.R. § 416.920c. Under the new regulations, an ALJ is not required to "defer or give any specific evidentiary weight, including

5

controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must consider the following five factors when evaluating medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] disability program's policies and evidentiary requirements." § 416.920c(c)(1)–(5). Of the five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." § 416.920c(b)(3). In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each opinion individually. § 416.920c(b)(1). Instead, the ALJ may "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id*.

Here, Dr. Bennington rendered medical opinions in May 2018 and September 2019 regarding Plaintiff's physical ability to do work-related activities. (R. 1031–33, May 18, 2018 opinion; R. 1850–52, September 16, 2019 opinion.) In the May 2018 opinion, Dr. Bennington opined that as a result of her back pain and spine issues, Plaintiff could lift and carry 20 pounds occasionally and less than ten pounds frequently, could stand or walk less than two hours and sit for three hours during the workday, could sit or stand for 30 minutes before changing positions

6

and before walking around for five minutes, and needed to change positions at will. (R. 1031–33.) Further, he opined that Plaintiff could occasionally twist and climb stairs, but could never stoop, crouch, or climb ladders and that her reaching, handling, fingering, feeling, pushing, and pulling were limited by sensory loss related to her diabetes and back issues. (*Id.*) Dr. Bennington also opined that Plaintiff should avoid concentrated exposure to extreme heat or cold and wetness, and moderate exposure to humidity, pulmonary irritants, and hazards, because of her asthma. (*Id.*) Finally, he opined that Plaintiff would likely miss work more than three times a month. (*Id.*) Dr. Bennington's September 2019 opinion largely confirmed the May 2018 opinion, with some minor variations. (R. 1850–52.) In his September 2019 opinion, Dr. Bennington opined that Plaintiff could only occasionally lift or carry ten pounds, she could only stand for 15 minutes before changing position, she needed to walk around every 15 minutes, she needed to lie down frequently, and she could never twist. (*Id.*) He further opined that Plaintiff needed to avoid *all* exposure to pulmonary irritants and hazards. (*Id.*) Finally, Dr. Bennington opined that Plaintiff's impairments did not impact her fingering or feeling abilities and that she did not need any restriction regarding wetness or humidity. (*Id.*)

The ALJ considered Dr. Bennington's opinions, but did not attribute them to Dr. Bennington, identifying the author as "[a] physician, whose signature was illegible" and observing that the author of the May 2018 and September 2019 opinions "appear[ed] to be the same physician." (R. 28–29.) The parties, however, do not dispute Dr. Bennington's authorship of the May 2018 and September 2019 opinions. (*See* Comm'r's Opp'n 4–5, ECF No. 17.) The ALJ found Dr. Bennington's opinions to be only partially persuasive, reasoning as follows:

> The opinions provided in these two forms are persuasive, to the extent that the evidence supports an ability for the above-described reduced range of sedentary work. At [the] hearing, [the claimant] reported that she needed to change positions to relieve back pain and lower extremity swelling. Although the second assessment indicates a need for more

> frequent position changes, the evidence does not demonstrate significant worsening of low back pain or swelling to warrant more frequent position changes. Further, the evidence does not demonstrate sensory loss on monofilament testing or physical exams to warrant handling, fingering, feeling, pushing, and pulling limitations, despite frequent references to neuropathy in the record. Her asthma requires some pulmonary limitations given ongoing exacerbations, but the evidence does not establish that breathing difficulties were significantly affected by wetness, humidity, or temperature extremes. The record also fails to demonstrate a need for more than three absences per month. Instead, an allowance for 45 minutes off task throughout the day would appropriately accommodate reports of fatigue and a need to take medications. Overall, treatment records are consistent with an ability for a reduced range of sedentary work.

(R. 29.)

Because the ALJ did not identify Dr. Bennington as the author of the May 2018 and September 2019 opinions, it was not possible for her to conduct the five-factor analysis required by 20 C.F.R. § 416.920c(c). In particular, as set forth above, the ALJ must consider an opining source's "relationship with the claimant," which, in turn, requires consideration of the "[l]ength of the treatment relationship," the "[f]requency of examinations," the "[p]urpose of the treatment relationship," the "[e]xtent of the treatment relationship;" and the "[e]xamining relationship." §§ 416.920c(c)(3)(i)–(v). Plaintiff testified that she had been treating with Dr. Bennington for approximately twenty years and that over the past two years, has treated with him approximately two-to-three times per month. (R. 52–53.) Because the regulations required the ALJ to consider this information when evaluating Dr. Bennington's opinions, her failure to do so requires remand. *See, e.g., Dobbins v. Comm'r of Soc. Sec.,* No. 2:18–cv–725, 2019 WL 1054552, at *5 (S.D. Ohio Mar. 6, 2019) *report and recommendation adopted,* 2019 WL 1455476 (S.D. Ohio Apr. 2, 2019) (reversing where the ALJ "failed to appreciate" that plaintiff's treating source had signed the at-issue medical opinion, and as a result, failed to conduct the required analysis); *see also Keyes v. Saul*, No. 1:19–cv–2495, 2021 WL 1214691, at *18 (N.D. Ohio Mar. 31, 2021) (reversing where ALJ failed to ascertain the identity of a medical opinion's author due to the

illegibility of the signature, advising that the ALJ "should have inquired during the hearing"); *Britton v. Comm'r of Soc. Sec.,* No. 1:19–cv–668, 2020 WL 365006, at *7–8 (N.D. Ohio Jan. 2, 2020) *report and recommendation adopted,* 2020 WL 364223 (N.D. Ohio Jan. 22, 2020) (reversing where ALJ neglected to "clarif[y] the identity of the medical source at the hearing" where signature on the opinion was illegible).

  The undersigned further concludes that the ALJ's failure to identify Dr. Bennington as the author of the May 2018 and September 2019 opinions is not harmless. "[A]n agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983); *see also Stacey v. Comm'r of Soc. Sec.,* 451 F. App'x 517, 520 (6th Cir. 2011) ("[A]n error is harmless only if remanding the matter to the agency 'would be an idle and useless formality' because 'there is [no] reason to believe that [it] might lead to a different result.'") (quoting *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004)). The procedures set forth in the at-issue regulations "bestow[] a substantial right on parties before the agency," as contrasted with regulations "adopted for the orderly transaction of business." *See Wilson*, 378 F.3d at 547 (internal quotation marks and citations omitted). Here, it is clear that the ALJ failed to comply with the regulations' mandate that § 416.920c(c)'s five factors be considered. Moreover, the RFC the ALJ assessed is not consistent with Dr. Bennington's opinions, and his more restrictive opinions are not so patently deficient that the ALJ could not

9

possibly credit them. *Cf. Wilson*, 378 F.3d at 547 (6th Cir. 2004) (identifying scenarios in which an ALJ's failure to follow procedures in evaluating an opinion could constitute harmless error).[5]

Accordingly, remand is required so that the ALJ can re-weigh the evidence in accordance with the procedures set forth in the applicable regulations. The undersigned therefore **RECOMMENDS** that Plaintiff's Statement of Errors be **SUSTAINED**.

## V. DISPOSITION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** the case under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

---

[5] The undersigned recognizes that *Wilson's* identification of harmless-error scenarios was rendered in the context of evaluating an ALJ's departure from the old regulations' requirements for evaluating treating physicians, but finds those scenarios equally applicable under the revised regulations and the circumstances presented here.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE